

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

CENTRAL STATES, SOUTHEAST AND )
SOUTHWEST AREAS PENSION FUND, et al., )
) No. 04 C 5655
Plaintiffs, )
) Suzanne B. Conlon, Judge
v. )
)
AMERICAN INDUSTRIAL ASSURANCE )
COMPANY, )
)
Defendants. )

## MEMORANDUM OPINION AND ORDER

Central States, Southeast and Southwest Areas Pension Fund and Howard McDougall ("Central States") sue American Industrial Assurance Co. ("American") under the Employee Retirement Income Security Act of 1974 ("ERISA"), as amended by the Multiemployer Pension Plan Amendments Act of 1980 ("MPPAA"), 29 U.S.C. § 1001 *et seq.*, to collect withdrawal liability payments.[1] Central States moves for summary judgment pursuant to Fed. R. Civ. P. 56.

## BACKGROUND

The material facts are undisputed.[2] Central States is a multiemployer pension plan under 29 U.S.C. §§ 1002(37) and 1301(a)(3). Philip Services Corporation ("PSC") owned 100% of American's stock at all relevant times. PSC and American constitute a parent-subsidiary control

---

[1] On February 5, 2005, the court dismissed defendant Phencorp Reinsurance Company, Inc. for lack of jurisdiction. *See* Dkt. Nos. 29-30.

[2] American did not respond to Central States' Local Rule 56.1 statement of material facts. Central States' facts are deemed admitted. L.R. 56.1; *Smith v. Lamz*, 321 F.3d 680, 683 (7th Cir. 2003).

1

group pursuant to 26 C.F.R. § 1.414(c)-2(b) and a single employer under 29 U.S.C. § 1301(b)(1). PSC was subject to collective bargaining agreements requiring it to contribute to the Central States pension fund. On November 29, 2003, PSC's obligation to contribute to the fund ceased and the PSC control group effected a complete withdrawal from the pension fund within the meaning of 29 U.S.C. § 1383. As a result, all entities constituting the control group incurred withdrawal liability to the pension fund in the amount of $1,058,683.09, as determined under 29 U.S.C. § 1381(b).

On February 9, 2004, American received a notice and demand for payment of the withdrawal liability. Central States issued the February 9 notice and demand in accordance with 29 U.S.C. §§ 1382(2) and 1399(b)(1). On March 22, 2004, American received notice that its withdrawal liability payments were past due. Central States issued the March 22 notice pursuant to 29 U.S.C. § 1399(c)(5)(A). American did not request review or arbitration of the withdrawal liability assessment pursuant to 29 U.S.C. §§ 1399 and 1401. American does not dispute the amount of the $1,058,683.09 assessment and has not made withdrawal liability payments. *See* Resp. at 8.

## DISCUSSION

### I. Summary Judgment Standard

Summary judgment is appropriate when the moving papers and affidavits show there is no genuine issue of material fact and the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). Once a moving party meets its burden, the non-moving party must go beyond the pleadings and set forth specific facts showing there is a genuine issue for trial. Fed. R. Civ. P. 56(e); *Silk v. City of Chicago*, 194 F.3d 788, 798 (7th Cir. 1999). The court considers the record as a whole and draws all reasonable inferences in the light most favorable to the party opposing the motion. *Bay v. Cassens Transport Co.*, 212 F.3d 969, 972

(7th Cir. 2000). A genuine issue of material fact exists when "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

## II. Summary Judgment Motion

Central States contends summary judgment is warranted on American's liability for the assessment. Specifically, Central States argues American's failure to request review or arbitration of the assessment and its failure to pay the $1,058,683.09 liability warrants summary judgment in Central States' favor.

An employer withdrawing from a multiemployer pension plan is liable for its proportionate share of the plan's unfunded vested benefits under the MPPAA. 29 U.S.C. §§ 1381, 1391. Congress enacted the MPPAA to prevent multiemployer ERISA plans from becoming insolvent by withdrawing employers. *See Connolly v. PBGC*, 475 U.S. 211, 215-17 (1986); *Central States, Southeast and Southwest Areas Pension Fund v. Central Transport, Inc.*, 85 F.3d 1282, 1288 (7th Cir. 1996); *Peick v. Pension Ben. Guar. Corp.*, 724 F.2d 1247, 1271 (7th Cir. 1983). Congress did not create withdrawal liability to punish withdrawing employers. Rather, the MPPAA was enacted to protect employees' vested pension interests. *Central States, Southeast and Southwest Areas Pension Fund v. Midwest Motor Exp., Inc.*, 999 F. Supp. 1153, 1163 (N.D. Ill. 1998). To collect withdrawal liability, a pension plan must determine the amount owed and send the withdrawing employer a notice and demand for payment. *See* 29 U.S.C. §§ 1382, 1390-91; *Central States, Southeast and Southwest Areas Pension Fund v. Bell Transit, Co.*, 22 F.3d 706, 707 (7th Cir. 1994). The employer may request review of the assessment under 29 U.S.C. § 1399(b)(2) and, if dissatisfied with the review, initiate arbitration under 29 U.S.C. § 1401(a)(1). *See Bell Transit*, 22 F.3d at 707.

3

If the employer fails to initiate arbitration, the assessment becomes due and owing and the plan may sue to collect. 29 U.S.C. § 1401(b)(1); *Robbins v. Admiral Merchants Motor Freight, Inc.*, 846 F.2d 1054, 1056 (7th Cir. 1988).

There is no issue of fact regarding American's withdrawal liability. Indeed, American does not dispute: (1) it is subject to withdrawal liability; (2) it received a notice and demand for payment; (3) it did not initiate review or arbitration; and (4) the $1,058,683.09 assessment is accurate. However, American contends the assessment must be reduced by 50% pursuant to 29 U.S.C. § 1405(b) because it is undergoing liquidation and dissolution. ERISA § 1405(b) reduces the liability allocable to an insolvent employer undergoing liquidation or dissolution. American argues it was not required to initiate arbitration of the assessment determination for Section 1405(b)'s reduction to apply. American's arguments must fail.

Preliminarily, American did not file a Local Rule 56.1(b) statement of additional facts that require denial of summary judgment. Instead, American's assertions regarding its financial status are improperly raised in its response memorandum. Central States did not respond to the financial status allegations, nor was it required to do so. However, even were the court to view American's financial allegations in its favor, its financial status does not preclude summary judgment or limit its liability.

Section 1401 provides "*any* dispute between an employer and the plan sponsor . . . concerning a determination made under sections 1381 through 1399 of this title *shall* be resolved through arbitration." 29 U.S.C. § 1401(a)(1) (emphasis added); *see also Banner Industries, Inc. v. Central States, Southeast and Southwest Areas Pension Fund*, 875 F.2d 1285, 1294 (7th Cir. 1989) (the term "shall" means arbitration is mandatory). "[A]ny determination made by a plan sponsor

4

under sections 1381 through 1399 of this title and section 1405 of this title is presumed correct unless the party contesting the assessment establishes by a preponderance of the evidence that the determination was unreasonable or clearly erroneous." *Id.* at § 1401(a)(3)(A). "If no arbitration proceeding has been initiated . . . the amounts demanded by the plan sponsor . . . shall be due and owing on the schedule set forth by the plan sponsor." *Id.* at § 1401(b)(1).

Arbitration is the preferred method for resolving pension plan disputes and failure to arbitrate may have adverse consequences. *See Robbins*, 846 F.2d at 1056. The arbitration requirement applies to liability reduction requests under § 1405. In *Central States, Southeast and Southwest Areas Pension Fund v. Johnco*, 694 F. Supp. 478 (N.D. Ill. 1988), a case with almost identical facts, the defendant was precluded from limiting liability under Section 1405 because it failed to request arbitration as required by the MPPAA. In holding Section 1405 disputes must be arbitrated, the court reasoned:

> [T]he structure of the statute indicates that Congress intended Section 1405 disputes be arbitrated. Most importantly, Section 1381(b)(1)(D), the provision detailing how a pension fund is to calculate withdrawal liability, requires funds to consider Section 1405 in their calculations. Thus a fund's determination of withdrawal liability under Section 1381 necessarily takes into consideration the employer's insolvency or sale of assets. In addition, Section 1401(a)(3)(A) cross references Section 1405. Because issues under Section 1405 are part of the calculus for determining withdrawal liability under Section 1381 and Section 1391, those issues should be arbitrated under Section 1401(a).

*Id.* at 480 (citations omitted); *see also Robbins v. Griffith Motor Express, Inc.*, No. 86 C 0700, 1987 WL 19804, *3 (N.D. Ill. Nov. 12, 1997) (Section 1405 is arbitrable and "requiring disputes of determinations made pursuant to Sections 1381 through 1399 to be arbitrated, yet allowing defenses under Section 1405 to be brought directly before the court, would lead to piecemeal litigation which is to be avoided whenever possible").

American's reliance on bankruptcy decisions from outside this Circuit is misplaced. Those cases do not control, nor are they inconsistent with this Circuit's determination that Section 1405 defenses must be arbitrated or waived. Moreover, the determination that Section 1405 defenses must be arbitrated is consistent with that of other courts. *See e.g., Langone v. Yankee Food Distrib., Inc.*, No. 94-10803-MEL, 1995 WL 791942, *1-2 (D. Mass. Dec. 28, 1995) (Section 1405 defense must be arbitrated); *Local 478 Trucking and Allied Indus. Pension Fund v. Jayne*, 778 F. Supp. 1289, 1313 (D.N.J. 1991) (right to contest withdrawal liability waived when arbitration not initiated); *Tr. of the Amalgamated Ins. Fund v. Vi-Mil, Inc.*, No. 85 Civ. 8424, 1987 WL 14665, *3-4 (S.D.N.Y. Oct. 28, 1987) (Section 1405 defense must be arbitrated); *Central States, Southeast and Southwest Areas Pension Fund v. Skyland Leasing Co.*, 691 F. Supp. 6, 15 (W.D. Mich. 1987) (same); *Tr. of the Amalgamated Cotton Garment and Allied Indus. Fund v. Baltimore Sportswear, Inc.*, 632 F. Supp. 641, 642 (S.D.N.Y. 1986) (same).

Central States' summary judgment motion on the $1,058,683.09 liability assessment must be granted. In addition, Central States seeks interest, liquidated damages, costs and attorney's fees. Delinquent withdrawal liability payments are treated in the same manner as delinquent contributions under 29 U.S.C. § 1145. *See* 29 U.S.C. § 1451(b); *Central States, Southeast and Southwest Areas Pension Fund v. Slotky*, 956 F.2d 1369, 1375 (7th Cir. 1992). In a successful suit to enforce Section 1145, the damages provided in 29 U.S.C. § 1132(g)(2), including interest, liquidated damages, costs and attorney's fees, are mandatory. *Id.* Liquidated damages "are something that an employer must pay as a penalty for refusing to follow the statutory procedure for challenging assessments of withdrawal liability." *Central States, Southeast and Southwest Areas Pension Fund v. Lady Baltimore Foods, Inc.*, 960 F.2d 1339, 1347 (7th Cir. 1992). Central States is therefore entitled to

interest, liquidated damages, attorney's fees and costs pursuant to 29 U.S.C. §§ 1451(b) and 1132(g)(2).

## CONCLUSION

For the foregoing reasons, Central States' summary judgment motion is granted. Central States is awarded $1,058,683.09, plus interest, liquidated damages, attorney's fees and costs.

February 28, 2005                     ENTER:

*Suzanne B. Conlon*
Suzanne B. Conlon
United States District Judge