# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
### EASTERN DIVISION

| | | |
|---|---|---|
| **CENTRAL STATES, SOUTHEAST AND SOUTHWEST AREAS PENSION FUND, and HOWARD McDOUGALL, trustee** | ) ) ) ) ) | |
| **Plaintiffs,** | ) ) | **Case No. 04 C 5655** |
| **v.** | ) ) | **Magistrate Judge Morton Denlow** |
| **PHENCORP REINSURANCE COMPANY, INC., a Barbados Corporation,** | ) ) ) ) | |
| **Defendant.** | ) | |

## <u>MEMORANDUM OPINION AND ORDER</u>

Plaintiff Central States, Southeast and Southwest Areas Pension Fund ("Central States" or "Plaintiff") filed a complaint against Defendant Phencorp Reinsurance Company, Inc. ("Phencorp" or "Defendant") to recover payments allegedly owed to Central States by Phencorp's parent company, Philip Services Corporation ("PSC") pursuant to the Employee Retirement Income Security Act ("ERISA"). Phencorp filed a motion to dismiss for lack of personal jurisdiction under Federal Rule of Civil Procedure 12(b)(2). By agreement of the parties, the Court conducted a bench trial on the papers to decide the issue of jurisdiction on the merits to which a preponderance of the evidence standard applies. Oral argument was held on December 17, 2007. For the reasons stated below, the Court finds that personal jurisdiction exists over Phencorp and denies Phencorp's motion to dismiss for lack of

personal jurisdiction.

# I. PROCEDURAL HISTORY

On August 27, 2004, Central States filed its complaint against Phencorp. Central States served a former employee of Phencorp with its complaint. On February 3, 2005, this action was dismissed on the ground that Central States had failed to establish personal jurisdiction over Phencorp. *Central States, Southeast and Southwest Areas Pension Fund v. Phencorp Reinsurance Co.,* 2005 WL 4814180 (N.D. Ill. 2005). On appeal, the Seventh Circuit remanded the case so that Phencorp could be properly served and jurisdiction-based discovery could be extended over Phencorp. *Central States, Southeast and Southwest Areas Pension Fund v. Phencorp Reinsurance Co.,* 440 F.3d 870 (7th Cir. 2006). In October 2006, this Court directed that Phencorp could be served through its attorneys of record, and accordingly its attorneys were properly served. The Court also allowed the parties to conduct jurisdiction-based discovery, with the parties agreeing to produce information for up to five years prior to the filing date of this action. D.R. at 4.[1]

This ruling is based on a trial on the papers in which the parties have submitted briefs and supporting exhibits which constitute the record in this case. *See Sullivan v. Bornemann,* 384 F.3d 372, 375 (7th Cir. 2004) (noting that a district court decision, rendered

---

[1]Citations to the record are in the following form: Defendant Phencorp's Rule 12(b)(2) Motion to Dismiss for Lack of Personal Jurisdiction is cited as D.M. ¶ __; Plaintiff Central States' Response in Opposition to Defendant Phencorp's Rule 12(b)[(2)] Motion to Dismiss for Lack of Personal Jurisdiction is cited as P.R. at __; Defendant Phencorp's Reply in Support of its Motion to Dismiss for Lack of Personal Jurisdiction is cited as D.R. at __; and Plaintiff Central States' Sur-Reply in Opposition to Defendant Phencorp's Rule 12(b)[(2)] Motion to Dismiss for Lack of Personal Jurisdiction is cited as P.S.R. at __.

after reviewing the stipulated facts of the parties, was more akin to a bench trial than summary judgment, and was thus governed by Federal Rule of Civil Procedure 52(a)); *Hess v. Hartford Life & Associates Ins. Co.,* 274 F.3d 456, 461 (7th Cir. 2001) (entering a judgment based upon a stipulation of facts that made up an administrative record that was treated as a bench trial governed by Fed. R. Civ. P. 52 (a)); *Brach's Confections, Inc. v. McDougall,* 320 F. Supp. 2d 726 (N.D. Ill. 2004) (conducting a trial on the papers in an ERISA case); Morton Denlow, *Trial on the Papers: An Alternative to Cross-Motions for Summary Judgment,* Fed. Lawyer, Aug. 1999, at 30. The parties agreed to proceed in this manner and to waive their right to present oral testimony. The parties agree that the Court may decide contested issues of fact based on the declarations and give them such weight as the Court may deem appropriate. The following constitute findings of fact and conclusions of law pursuant to Federal Rule of Civil Procedure 52(a).

## II. FACTUAL BACKGROUND

### A. Phencorp and PSC

Phencorp is a reinsurance company organized under the laws of Barbados. D.M. ¶ 7. Its principal place of business is located in St. Michael, Barbados. *Id.* Insurance business is defined as the issuing of insurance or reinsurance policies, the payment of claims and the investment of funds related to insurance activities. P.R. at 13 n.9. Phencorp is a wholly owned subsidiary of PSC. D.M. ¶ 13. PSC is a Delaware corporation with its principal place of business located in Houston, Texas. *Id.;* P.S.R. at 4. PSC's principal place of business was located in Ontario, Canada, but in 2001, PSC moved its corporate headquarters to Texas.

P.S.R. at 4. Phencorp was formed primarily as an insurance option for PSC's environmental risks and to save money. P.R. at 3. Phencorp's business was managed by First Management Corporation ("FMC"), which ran Phencorp's day-to-day operations. P.R. at 3; P.S.R. at 7.

The relationship between Phencorp and PSC is as follows: PSC, on behalf of itself and its subsidiaries and affiliates, would contract with an insurance company ("Fronting Company") to issue a policy to cover various business risks, including automobile, workers' compensation, environmental, and general liability risks in the United States. P.R. at 4. PSC would bill its subsidiaries and affiliates for their respective portion of the premiums or losses paid by PSC. *Id.* Phencorp and the Fronting Company would then enter into a reinsurance agreement by which the Fronting Company would transfer the risk to Phencorp, as well as the insurance premium corresponding to the risk ceded to Phencorp. *Id.* Phencorp would negotiate the reinsurance agreements by reviewing the draft insurance agreements and suggested premiums and ask for a better premium if it believed the suggested one was inadequate. P.R. at 3. The reinsurance agreements provide that the Fronting Company will undertake the duties of adjusting claims arising under the agreements, and that Phencorp shall pay the expenses associated with those activities. P.S.R. at 5. Thus, the reinsurance agreements designated the Fronting Company as its agent for the adjusting of claims. *Id.* Through this arrangement, Phencorp insured or reinsured only PSC's operations (and the operations of PSC's subsidiaries and affiliates), regardless of geographic location, including operations in the United States ("U.S."). P.R. at 4-5. Phencorp maintains its legal liability under the reinsurance policy until it is commuted. P.R. at 5. Thus, absent a commutation

agreement between Phencorp and the Fronting Company, an indefinite legal obligation under

the reinsurance agreement exists. *Id.*

## B.    Contacts with the U.S.

Phencorp does not have any employees in the U.S., nor does it maintain a physical

place of business or own real estate in the U.S. D.M. ¶ 8-10. Phencorp does not maintain an

internet site, nor does it conduct business over the internet. D.M. ¶ 10; D.R. at 6. However,

Phencorp has entered into several reinsurance agreements with U.S. companies prior to the

filing of this lawsuit. It has also had various other contacts with the U.S., such as its

communication with PSC and its election to be considered a domestic corporation under the

United States Tax Code. Central States also asserts that Phencorp has maintained a post

office box and bank account in the U.S.

### 1.    Phencorp's Reinsurance Agreements with U.S. Companies

Between March 1996 and October 29, 2003, Phencorp entered into at least five

reinsurance agreements with different Fronting Companies having operations in the U.S. P.R.

at 6, 8.[2] Most of these agreements were executed more than five years prior to the filing date

of this action, however three amendments to these agreements were executed within a year

---

[2]Phencorp entered into reinsurance agreements with 1)American Home Assurance Company, a Pennsylvania Corporation, and American International Specialty Lines Insurance Company, a New York Insurance Company, in 1996 with addenda dated in 1997, 1998, 2003, and 2004; and another agreement in 1997 with addenda dated in 1998 and 2003; 2) Reliance National Indemnity Company, a corporation organized in the U.S. in 1997, with addenda dated 1999; 3) London Guarantee Insurance Company, Continental Casualty Company National Fire Insurance Company of Hartford and American Casualty Company of Reading, Pennsylvania (collectively, "CNA"), in 1998; 4) American International Specialty Lines Insurance Company, a New York insurance company; and 5) Lumbermens Mutual Casualty Company ("Kemper"), a U.S. company, in 2000 with a 2001 novation. D.R. at 7.

of the filing date.[3] D.R. at 7. Phencorp did not execute a commutation agreement with respect to any of these reinsurance policies, thus its obligations under these agreements continue to the present day. P.R. at 6, 8. Each of the reinsurance agreements contained similar provisions. P.R. at 7. Each provided for a "loss deposit fund" to ensure Phencorp's compliance with the agreement. *Id.* Each also provided that the Fronting Company would adjust, settle or compromise all claims arising, and Phencorp would abide by those loss settlements. *Id.* Each Fronting Company was required to periodically provide Phencorp with a report showing, among other things, the gross premium written, ceding commission, and losses paid. *Id.*

Phencorp agreed to submit disputes under the agreements to binding arbitration to be held in New York, and that U.S. courts would have jurisdiction to enforce an arbitration award.[4] *Id.* For its agreement with the Kemper Fronting Company, Phencorp designated a Superintendent, Commissioner or Director of Insurance located in the U.S. to accept service of process on its behalf.[5] P.R. at 7.

Phencorp was also obligated to provide collateral, in the form of a letter of credit or cash, to secure its obligations under the reinsurance agreements. P.R. at 7. Accordingly,

---

[3]Phencorp indicates in its reply brief that its agreement with Kemper formed in 2000, however it also states that "none of these agreements were executed within five years of the filing date of this action."

[4]No such arbitration proceedings ever occurred. D.R. at 8.

[5]Central States asserts it designated an Illinois superintendent in its brief, but Exhibit 12 to Ex. A of Central States' Response appears to indicate that an officer from New York was designated.

Phencorp posted a letter of credit with respect to two of the agreements, while two other Fronting Companies withheld funds belonging to Phencorp. P.R. at 7-8. All of these letters of credit, however, were made and held entirely outside of the U.S. D.R. at 9. Phencorp also executed a Deposit Custody Agreement with one of the Fronting Companies. P.R. at 6.

Phencorp earned substantial ceded premiums from the Fronting Companies. P.R. at 11. For example, in 2000, Phencorp expected to earn ceded premiums with respect to the following U.S. risks: $945,000 for pollution legal liability, $575,654 for contractor's operations liability, $629,745 for auto liability, and $693,618 for general liability. *Id.* It also earned $204,845.25 under its agreement with CNA, and was entitled to even more. P.R. at 11-12. Phencorp earned ceded premiums from the Fronting Companies from 1999 through 2004. *Id.*

In addition, a substantial number of claims for significant amounts were made against the policies Phencorp reinsured. P.R. at 12. For example, Phencorp reported losses of $655,000 for 2001. *Id.* Also, 3,458 workers' compensation claims were reported in 1998, of which 2,403 were paid and 1,055 remained outstanding as of December 31, 2004. *Id.* 1,034 general liability claims were reported in 2000, of which 748 were paid and 286 remained outstanding as of December 31, 2004. *Id.*

Phencorp is no longer reinsuring any policies beyond 2004. P.R. at 8. Phencorp asserts the agreements set forth above have been in a "run-off" state, meaning that they are all expiring and have not been, and will not be, renewed as they expire. D.R. at 7. It does, however, expect to experience additional losses for pollution legal liability, contractors

operations and property risks after 2004. P.R. at 8. Phencorp also paid claims during 2004 that were allocated to policies issued in years prior to 2004. *Id.* In addition, Phencorp has reserved funds to pay losses it expects to incur after 2004 under policies it previously reinsured. *Id.*

### 2. Post Office Box in Miami, Florida

Central States asserts that Phencorp maintained a post office box in Miami, Florida to which Fronting Companies sent requests for payment. P.R. at 5. A service provider at the post office box would gather the claims information relating to Phencorp's reinsurance obligations into large bundles before forwarding it to Phencorp's office in Barbados. *Id.* However, Phencorp's President and Chairman testified this post office box "did not belong to Phencorp," and was either one he personally rented or it belonged to a third party management company. D.R. at 11. Phencorp asserts the post office box was used by a third-party service provider merely to expedite mail delivery from Canada to Barbados. *Id.* This service provider, however, was under contract to manage the operations of FMC, which in turn managed Phencorp's daily operations. P.R., Ex. A at 31. Thus, although the post office box did not directly belong to Phencorp, because its agent's agent maintained the box, it is attributable to Phencorp. Thus, the Court finds that through its agent, Phencorp did maintain a post office box in Miami, Florida.

### 3. Phencorp's Contacts with PSC

Phencorp and PSC communicated regarding Phencorp's reinsurance agreements. A Fronting Company submitted to Phencorp an invoice representing all payments during the

Fronting Company's accounting cycle. P.R. at 5. Before Phencorp remitted payment in response to this payment request, Phencorp contacted PSC's Risk Management Department to verify that Phencorp was obligated to pay the amount requested. *Id.* Phencorp requested PSC's "confirmation" via facsimile and/or electronic mail on a monthly basis. *Id.*; P.S.R. at 9.

In addition, according to Phencorp's President and Chairman, he would talk to officers from PSC two to three times a week when PSC was in its Canada office. D.R. at 12. However, when PSC moved to Houston, communication between Phencorp's President and PSC significantly lessened. *Id.* In 2001, the officers from the companies had very little communication, and as of September 2007, they communicate less than once a month. *Id.*

Phencorp also issued two insurance policies directly to PSC - a property policy and an excess officers' and directors' policy ("D&O Policy") in 2003. P.R. at 2. The property policy was issued to PSC and insured the worldwide operations of PSC and its affiliates and subsidiaries, including locations in the U.S. *Id.* The D&O Policy issued to PSC covered the period of 2003 to 2004. *Id.* Phencorp earned $5 million in premium when it issued the D&O Policy. P.R. at 12.

**4.      Phencorp's Election under the United States Tax Code**

In March 2001, Phencorp elected to be treated for U.S. tax purposes as a domestic corporation under the United States Tax Code for U.S. tax purposes, commencing with the

2000 tax year.[6] P.R. at 2, 8. Under the terms of the election, Phencorp's earnings or losses since 2001 have been submitted annually as part of the consolidated federal tax return filed by its parent company, PSC. D.R. at 13. As part of the election process, Phencorp obtained a taxpayer identification number, and was required to appoint a U.S. resident as its agent to accept tax notices and to discuss its tax returns with the Internal Revenue Service.[7] P.R. at 2-3. Accordingly, Phencorp thereafter prepared and filed its tax returns, including for the years 2001 to and including 2004. P.R. at 8. The 2003 and 2004 tax returns were prepared for Phencorp by KPMG LLP's Houston, Texas office. P.R. at 13.

### 5. Dispute over the Existence of a Phencorp-Owned U.S. Bank Account.

Central States asserts that Phencorp maintained a bank account in the U.S., however Phencorp disputes this allegation. P.R. at 4 n.3. Central States claims that Phencorp sent its monthly bank balances and short-term investment balances to PSC every month, and that one of the accounts referenced every month is referred to as "our US account" by a Phencorp staff member in a November 13, 2001 facsimile cover sheet. P.R. at 4; D.R. at 9. Moreover, the same account number was identified as Phencorp's "Bank Balances" in correspondence to PSC personnel. P.S.R. at 8.

---

[6]In March 2001, Phencorp submitted to the Internal Revenue Service a Foreign Insurance Company Election under Section 953(d) to be treated as a domestic corporation for United States tax purposes. P.R. at 8.

[7]Phencorp also submitted an Authorization and Consent of Subsidiary Corporation to be included in a Consolidated Income Tax Return for the calendar year 2000 as well as an Application for Employer Identification Number. P.R. at 8. Phencorp provided PSC's address in Rosemont, Illinois in connection with its election. P.R. at 13 n.8.

Phencorp asserts that the account actually belonged to Scotiabank Europe PLC, and that the account was utilized by Phencorp's bank in Barbados (London Life Bank and Trust Corporation) for currency conversion of funds being transferred "from Barbados to Europe." D.R. at 9-10. Phencorp's President and Chairman also testified that "Phencorp did not have any bank accounts in the United States" in 2001. D.R. at 10. Phencorp asserts that it currently does not maintain any bank accounts in the U.S. *Id.* Despite Phencorp's assertion, because this bank account number appears multiple times on Phencorp's bank balances, contained a significant amount of money as indicated by these bank balances[8], and was referred to as "our US bank account," the Court finds Phencorp did maintain this bank account.

### III. LEGAL STANDARDS

**A.     Motion to Dismiss for Lack of Personal Jurisdiction**

A defendant may move to dismiss a complaint for lack of personal jurisdiction pursuant to Rule 12(b)(2) of the Federal Rules of Civil Procedure. Fed. R. Civ. P. 12(b)(2). Because this motion is being decided by a trial on the papers, the plaintiff must prove personal jurisdiction over the defendant by a preponderance of the evidence. *See Purdue Research Foundation v. Sanofi-Synthelabo, S.A.,* 338 F.3d 773, 782 (7th Cir. 2003) ("When the district court holds an evidentiary hearing to determine jurisdiction, the plaintiff must establish jurisdiction by a preponderance of the evidence."); *Hyatt Int'l Corp. v. Coco,* 302 F.3d 707, 713 (7th Cir. 2002) (stating that if the court finds that any material facts are in

---

[8]Phencorp's reinsurance bank balances as of March 2, 2001 indicate this bank account's balance was $873,327.76, a higher balance than any of Phencorp's additional reinsurance bank balances.

dispute, it must hold an evidentiary hearing to resolve them, at which point the party asserting personal jurisdiction must prove what it alleged, and "until such a hearing takes place, the party asserting personal jurisdiction need only make out a *prima facie* case of personal jurisdiction"); 5B Charles Alan Wright & Arthur R. Miller, *Federal Practice and Procedure,* § 1351, pp. 285-288 (3d ed. 2004) ("The most common formulation found in the judicial opinions is that the plaintiff bears the ultimate burden of demonstrating that the court's personal jurisdiction over the defendant exists by a preponderance of the evidence, but needs only make a prima facie showing when the district judge restricts her review of the Rule 12(b)(2) motion solely to affidavits and other written evidence.").

**B.     Personal Jurisdiction**

Unless a federal statute expressly grants personal jurisdiction, a federal court borrows the personal jurisdiction law of the state where it sits. *See Waeltz v. Delta Pilots Retirement Plan,* 301 F.3d 804, 807 n.3 (7th Cir. 2002). This case arises under Title 1 of ERISA, which expressly grants personal jurisdiction. Under ERISA, any district court in which a plaintiff brings an action under this act "will have personal jurisdiction over the defendant if the defendant is properly served and has sufficient minimum contacts with the U.S." *Central States,* 440 F.3d at 875; *Waeltz,* 301 F.3d at 807 n.3; *See* 29 U.S.C. § 1132(e)(2). Both parties concede that Phencorp has been properly served, so the Court need only determine whether Phencorp has sufficient contacts with the U.S.

Federal due process generally requires a nonresident corporate defendant to have "certain minimum contacts with the forum such that the maintenance of the suit does not

offend 'traditional notions of fair play and substantial justice.'" *Helicopteros Nacionales de Columbia v. Hall,* 466 U.S. 408, 414 (1984) (citing *Int'l Shoe Co. v. Washington,* 326 U.S. 310, 316 (1945)); *See Burger King Corp. v. Rudzewicz,* 471 U.S. 462, 474 (1985) ("the constitutional touchstone remains whether the defendant purposefully established 'minimum contacts' in the forum state"). Such contacts "may be related or unrelated to the facts forming the basis for the lawsuit." *Int'l Med. Group v. Am. Arbitration Ass'n,* 312 F.3d 833, 846 (7th Cir. 2002); *Helicopteros,* 466 U.S. at 414. "Contacts related to the subject matter of the lawsuit may give rise to specific personal jurisdiction." *Int'l Med. Group,* 312 F.3d at 846; *Helicopteros,* 466 U.S. at 414. Both parties acknowledge this cause of action did not arise from a specific transaction between Central States and Phencorp, and thus specific jurisdiction cannot be the basis for this Court's personal jurisdiction over Phencorp.

However, a defendant may also be sued in the forum regardless of the subject matter of the litigation under general personal jurisdiction. *Helicopteros,* 466 U.S. at 414 n.9. Compared to specific jurisdiction, "the constitutional requirement for general jurisdiction is considerably more stringent." *Purdue,* 338 F.3d at 787. General personal jurisdiction may be established "only where the defendant has 'continuous and systematic business contacts' with the forum" such that it could reasonably foresee being brought into court in that forum for any matter. *Id.*; *Int'l Med. Group,* 312 F.3d at 846; *Burger King,* 471 U.S. at 474. The jurisdictional contacts must be so extensive as to approximate the defendant "being constructively present in the forum to such a degree that it would be fundamentally fair to require it to answer in a [forum] court in any litigation arising out of any transaction or

occurrence taking place anywhere in the world." *Purdue,* 338 F.3d at 787.

Courts examine the following factors in determining whether general jurisdiction exists:

> "1) whether and to what extent the defendant conducts business in the forum state; 2) whether the defendant maintains an office or employees within the forum state; 3) whether the defendant sends agents into the forum state to conduct business; 4) whether the defendant advertises or solicits business in the forum state; and 5) whether the defendant has designated an agent for service of process in the forum state."

*Adventus Americas Inc. v. Innovative Envtl. Technologies, Inc.,* 2007 WL 704938 (N.D. Ill. 2007) (citing *Helicopteros,* 466 U.S. at 416).

## IV. DISCUSSION

Central States concedes that specific jurisdiction cannot be the basis for this Court's personal jurisdiction over Phencorp. Thus, we only address whether the Court has general jurisdiction over Phencorp.

In remanding the case, the Seventh Circuit acknowledged this is a close case regarding general jurisdiction. *Central States,* 440 F.3d at 878. The court found that Central States failed to meet its overall burden of demonstrating personal jurisdiction given that the policies issued by Phencorp to U.S. companies expired before this suit was filed. *Id.* at 877. The court also found Phencorp's 2000, 2001 and 2002 U.S. tax forms to be "insufficient to demonstrate that Phencorp has continuing and systematic contacts with the United States." *Id.* Nonetheless, drawing all inferences in favor of Central States, the court found that Central States had established a prima facie case for general personal jurisdiction, considering the

possibility that Phencorp "wished to be treated as a U.S. domestic corporation for tax purposes," and that it might currently still be considered a domestic corporation. *Id.* at 878. The court also considered the extent to which Phencorp maintains contacts with the five U.S. policyholders, and whether it was soliciting additional business in the U.S. *Id.*

Following discovery on these issues, the Court now finds that Central States has met its burden to establish general personal jurisdiction over Phencorp. Phencorp has maintained continuous and systematic contacts with the U.S. primarily through its five reinsurance contracts with U.S. entities. These contacts have been enhanced by Phencorp's relationship with its parent company, its election to be considered a domestic corporation for U.S. tax purposes, and its maintenance of a post office box and bank account in the U.S.

## A.     Relevant Time Period for Jurisdictional Purposes

Central States argues that the Court should look to a time period of five years prior to the filing of the suit in determining jurisdiction. Phencorp argues that the Court should only look to the date of the filing of the suit to determine jurisdiction.

Jurisdiction is normally determined as of the date of the filing of the suit. *Wild v. Subscription Plus, Inc.,* 292 F.3d 526, 528 (7th Cir. 2002). When analyzing whether a party is continuously and systematically "doing business," however, courts have looked at a continuous period of time, rather than a specific fixed time. *Michael J. Neuman & Assoc. v. Florabelle Flowers, Inc.,* 15 F.3d 721, 724-25 (7th Cir. 1994). The court's analysis applied to Illinois' jurisdictional standards requiring a party to be continuously and systematically "doing business" in the state, however this standard is virtually identical to the federal

requirement for general personal jurisdiction that a party maintain continuous and systematic business contacts with the forum. One court found that although a critical point of the court's focus must be when a defendant is made a party to the suit, it examined a time period of approximately eight years, and found that because the party did not do business in Illinois for four years, there was no personal jurisdiction. *Id.* at 724. Another court limited discovery to one year prior to commencement of a lawsuit. *Id.* An Eighth Circuit case held that minimum contacts must exist either at the time the cause of action arose, the time the suit is filed, or within a reasonable period of time immediately prior to the filing of the lawsuit. *Pecoraro v. Sky Ranch for Boys, Inc.,* 340 F.3d 558, 562 (8th Cir. 2003).

The time period before the filing date is relevant to discover when any contacts were initially formed, and how continuous and systematic they were. Although the Court must focus on Phencorp's contacts with the U.S. on the filing date of the lawsuit, it will also look at some time period before the filing date to determine whether Phencorp's U.S. contacts were regular and systematic.

**B.      Phencorp Maintained Sufficient Contacts with the U.S. when this Lawsuit was Filed**

Central States uncovered enough evidence during discovery to meet its burden of demonstrating that the Court has general personal jurisdiction over Phencorp consistent with cases in this circuit. For example, the court in *Adventus Americas Inc. v. Innovative Environmental Technologies* found the defendant's contacts with the state "sufficient to cause it to reasonably anticipate being haled into court" in that state. 2007 WL 704938.

Although the defendant did not currently work, live or own property in Illinois, it did perform remediation services at four different locations throughout Illinois. *Id.* The defendant's remediation projects did not involve a quick stopover in the state, but rather required the defendant to be "hands-on," staying a few days initially at the site with repeated follow-up contacts. *Id.* Its relationship with one gas station lasted a year and a half, and the defendant publicized its substantial presence in Illinois on its website. *Id.* Moreover, the defendant admitted that it solicited business in Illinois, and that at one time it did maintain an office, telephone listing and employee in Illinois. *Id.* Thus, the court found that the defendant's contacts did "sufficiently rise to the level of 'minimum contacts' as required by due process." *Id.*

In *Michael J. Neuman & Associates v. Florabelle Flowers, Inc.,* the Seventh Circuit found that a defendant with no offices, agents, employees or property in Illinois was still "doing business" in Illinois due to the actions of its independent sales representative. 15 F.3d 721, 723 (7th Cir. 1994). The defendant's representative consistently contacted and made sales to Illinois citizens, periodically making telephone solicitations into Illinois and visiting Illinois on business approximately every six to eight weeks. *Id.* The defendant did not dispute that it conducted business in Illinois prior to the filing of the lawsuit, and the court found that even though its sales were lower, no significant change occurred in its relationship with Illinois before the commencement of the action. *Id.*

On the other hand, cases where courts in this circuit found no general personal jurisdiction involved defendants with much less contacts to the forum than Phencorp. For

example, in *Glass v. Kemper Corp.,* the court found it did not have general jurisdiction, even though the defendant had been physically present in the state several times per year, and had regular, but insubstantial conversations with individuals in that state. 930 F. Supp. 332, 338 (N.D. Ill. 1996). In its holding, the court noted that the defendant's lack of contacts with the state overwhelmed his few contacts with the state. *Id.* at 1339.

Similarly, in *Travelers Casualty and Surety Co. v. Interclaim, Ltd.*, the defendants' only contacts with the state were two lawsuits and a contingent beneficial interest held in a litigation escrow account. 304 F. Supp. 2d 1018 (N.D. Ill. 2004). The court found that because the defendant's participation in the relevant litigation was limited to a nine month period, three years before the current lawsuit, its contacts with the state were too limited to warrant a finding of general jurisdiction. *Id.* at 1025.

Unlike *Travelers,* Phencorp's agreements with the U.S. entities were not limited, sporadic events. Phencorp's obligations under the contracts have lasted for over seven years, and continue through the current lawsuit.  Unlike *Glass*, Phencorp's contacts with the U.S. overwhelm its lack of contacts. Although Phencorp does not own property or maintain an office or telephone number in the U.S., its contacts with the U.S. resulted in millions of dollars in earned ceded premiums, and thousands of claims against its policies. Like *Michael J. Neuman,* its agents had regular contact with the U.S. in the adjustment of its claims, and Phencorp was liable for U.S. taxes. Although Phencorp's additional contacts with the U.S. through its election under the United States Tax Code, its post-office box and its bank account do not by themselves create sufficient jurisdictional contacts with the U.S., the

substantial value and number of claims arising out of the five reinsurance contracts do create continuous and systematic business contacts with the U.S.

1.      **Phencorp's Election Under the United States Tax Code Does not by Itself Create Sufficient Minimum Contacts with the U.S.**

Phencorp elected to be treated as a domestic corporation under the United States Tax Code for U.S. tax purposes. Phencorp asserts this election was done as part of the consolidated federal tax return filed by its parent company PSC. Moreover, it argues that it only elected to be treated as a domestic corporation for tax purposes, and it did not avail itself of any additional benefits outside of the tax code.

A Section 953(d) election under the Internal Revenue Code provides that "for purposes of this title, [a foreign] corporation shall be treated as a domestic corporation," and as such, its earnings or losses will be subject to federal taxation. 26 U.S.C. § 953(d)(1). Accordingly, this election is for tax purposes only, and does not determine a foreign corporation's jurisdictional status.[9] Moreover, although Phencorp may have elected to pay taxes under the United States tax code, it appears to have done so only because it was required to do so by PSC so that it could file a consolidated federal tax return. Thus, the Court finds that Phencorp did not purposefully avail itself of the benefits of the U.S. solely

---

[9]Section 953(d)(1) states:
> In general, if (A) a foreign corporation is a controlled foreign corporation . . . and (D) such foreign corporation makes an election to have this paragraph apply and waives all benefits to such corporation granted by the United States under any treaty, for any purposes of this title, such corporation shall be treated as a domestic corporation.

26 U.S.C. § 953(d)(1).

Although the statute does require the electing foreign corporation to "waive all benefits to such corporation granted by the United States under any treaty," the Court reads this waiver to be limited for tax purposes only.

by electing to be treated as a domestic corporation under the United States tax code. *See Railcar Ltd. v. Southern Ill. Railcar Co.,* 42 F. Supp. 2d 1369, 1379 (N.D. Ga. 1999) (finding that a defendant paying ad valorem taxes to the state of Georgia upon the railcars it owned that transport items in the state did not create sufficient contacts with the state to grant personal jurisdiction over the defendant).

2.　　**Phencorp's Use of the Post Office Box and Bank Account Also do not by Themselves Create Sufficient Minimum Contacts with the U.S.**

The Court also does not find that the use of the post office box or the bank account alone create sufficient contacts with the U.S. to grant general personal jurisdiction over the defendant. Although Phencorp received mail from this post office box, and its agent may have used this box to expedite mail delivery, the Court does not find that Phencorp's use of the box resulted in it availing itself of the benefits of the forum such that it could reasonably anticipate being brought into court in the U.S. for any matter unrelated to the use of the box. *See Lakeview Tech., Inc. v. Vision Solutions, Inc.,* 2007 U.S. Dist. LEXIS 1333 (N.D. Ill. 2007) (holding that contact by mail is insufficient to justify exercise of personal jurisdiction). Moreover, Phencorp's banking relationship with the U.S., by itself, is insufficient to establish general personal jurisdiction over the defendant. *See Glass,* 930 F. Supp. at 336 (finding the fact that the defendant maintained a banking relationship in that state to be insufficient to establish general personal jurisdiction over the defendant).

3.　　**Phencorp's Reinsurance Agreements with Five U.S. Entities and its Relationship with PSC Create Continuous and Systematic Contacts with the U.S.**

By reason of Phencorp's reinsurance agreements with five U.S. entities, the Court finds Phencorp did maintain continuous and systematic contacts with the U.S. The parties' continuous course of dealing under the agreements and the signficant value and large number of claims arising out of these agreements resulted in Phencorp having continuous and systematic contacts with the U.S. "An out-of-state party's contract with an in-state party" does not by itself establish minimum contacts. *Continental Casualty Co. v. Southern Co.,* 284 F. Supp. 2d 1118, 1125 (N.D. Ill. 2003). The court must also consider the contract terms and the parties' course of dealing when determining whether the out-of-state party purposefully availed itself of the privilege of conducting activities in the forum. *Id.* In *Nationwide Mutual Insurance Co. v. Tryg International Insurance Co.,* for example, the Sixth Circuit found that a defendant's prior reinsurance agreements with companies in the state of Ohio and the defendant's participation in a property pool did not give a court in Ohio general personal jurisdiction over the defendant. 91 F.3d 790 (6th Cir. 1996). Considering the course of dealings between the contractual parties, the court found the defendant's relationship with one of the parties only lasted a year, was negotiated by a foreign company, and the defendant did not direct its activities toward the forum state in order to enter the contract. *Id.* at 794. The court found the defendant's relationship with the other party was "sporadic at best." *Id.* The court stated that "[n]one of the agreements required [the defendant] to send its representative to Ohio to conduct any business in the state, and [the defendant's] performance under the agreements did not require it to conduct substantial activities in Ohio." *Id.* The court also disregarded a "service of suit" provision in the defendant's

reinsurance agreement with the plaintiff, finding no evidence that the plaintiff ever used the provision to compel a foreign corporation to appear in court in Ohio. *Id.*

In this case, the terms of the contracts between Phencorp and the Fronting Companies appear to be typical of standard reinsurance policies. Phencorp negotiated the terms of the five contracts, some of which appear to have lasted for over seven years, and continue through the present. Although the communication between Phencorp and the Fronting Companies took place primarily through Phencorp's management company, FMC, the forum contacts of an agent are attributable to the principal. FMC managed Phencorp's business and its day-to-day operations, acting as an agent to Phencorp. Thus, FMC's contacts with the Fronting Companies are attributable to Phencorp.

Additionally, the reinsurance agreements designated the Fronting Company as Phencorp's agent for the adjusting of claims. The reinsurance agreements provide that the Fronting Company will undertake the duties of adjusting claims arising under the agreements, and that Phencorp shall pay the expenses associated with those activities. Thus, the Fronting Company's activities within the U.S. in adjusting claims in the ordinary course of business are also attributable to Phencorp.

Furthermore, Phencorp agreed to settle its disputes under the contracts through arbitration proceedings in the U.S. It agreed to arbitrate its disputes in the U.S. and to jurisdiction by U.S. courts to enforce an arbitration decision. P.S.R. at 7. It also designated an officer in the U.S. to accept service of process on its behalf. Although this designation was for the limited purpose of settling disputes under the agreements, Phencorp had an

expectation that they could be served in the U.S. Although an unrelated lawsuit does not by itself support a finding of general jurisdiction, this provision demonstrates that Phencorp could reasonably anticipate being brought into court in the U.S. *First National Bank v. El Camino Resources, Ltd.,* 447 F. Supp. 2d 902, 908 (N.D. Ill. 2006).

Moreover, although Phencorp only had five contracts with U.S. entities, these contracts generated millions of dollars in income for Phencorp and created thousands of claims against the policies. Phencorp earned over three million dollars in ceded premiums from its contracts with these U.S. entities. A substantial number of claims for significant amounts were also made against the policies Phencorp reinsured. For example, over 1000 workers' compensation claims and over 280 general liability claims against the policies Phencorp reinsured remained outstanding at the time the lawsuit was filed, while over 2,400 workers' compensation claims and over 740 general liability claims had already been paid. The amount of losses reported from such claims in just one year was over $650,000.

Most of the agreements were entered into over five years before the filing of this lawsuit, however Phencorp was still obligated under some of the contracts when this lawsuit was filed. Phencorp argues that most of these contracts were in a "run-off" period at the time the lawsuit was filed, and it did not plan to renew the contracts once they expired. However, Phencorp's obligations under these contracts still existed, as Phencorp had not entered a commutation agreement to sever those contracts. Moreover, it still had significant obligations to pay certain losses under the contracts. The paying of losses and the collecting of premiums are generally considered to be "'doing business'" even though the insurance company is

writing no new policies." *Asset Allocation & Mgmt. Co. v. Western Employers Ins. Co.,* 892 F.2d 566, 571 (7th Cir. 1990). Phencorp reserved funds to pay losses it expected to be incurred after 2004 under the policies, expecting to experience additional losses for pollution legal liability, contractors operations and property risks after 2003. It also paid claims during 2004 which were allocated to policies issued in years prior to 2004. Thus, Phencorp still maintained continuous contacts with the U.S. at the time the lawsuit was filed.

Phencorp's relationship with PSC also resulted in Phencorp having continuous and systematic contacts with the U.S. Although general personal jurisdiction cannot be based solely on a parent company's jurisdictional contacts, Phencorp's contacts with PSC were significant. They communicated regularly regarding its business relationship and the above reinsurance agreements. Phencorp also earned five million dollars in premium from the D&O policy it issued to PSC. Given the substantial amount of money involved with these contracts, the number of claims arising out of them, and the contacts Phencorp's agents had with the U.S., the Court holds it does have general personal jurisdiction over Phencorp.

## V. CONCLUSION

Phencorp's contracts with the U.S. entities were not discrete, sporadic deals. Rather, they resulted in millions of dollars in income for Phencorp and thousands of claims still outstanding. Thus, for the reasons set forth in this opinion, **Phencorp's motion to dismiss for lack of personal jurisdiction is denied and pursuant to a trial on the merits, the Court finds that Plaintiff has proven by a preponderance of the evidence that this Court has personal jurisdiction over Defendant Phencorp.**

24

**SO ORDERED THIS 11th DAY OF JANUARY, 2008.**

**MORTON DENLOW**
**UNITED STATES MAGISTRATE JUDGE**

**Copies sent to:**

Cathy L. Rath
Anthony E. Napoli
John Joseph Franczyk, Jr.
Timothy Craig Reuter
Central States Law Department
9377 West Higgins Road
10th Floor
Rosemont, Illinois 60018


Counsel for Plaintiff

Christopher E. Paetsch
Brent I. Clark
SEYFARTH SHAW LLP
55 East Monroe Street
Suite 420
Chicago, Illinois 60603

Counsel for Defendant